Good morning, Your Honors, and may it please the Court, Russell Leonard on behalf of Christopher Kent. The sex offender registration requirement is not available as a discretionary condition of supervised release. Congress passed an express mechanism for the eligibility for registration, and that's, of course, SORNA. What's your best authority for this? I feel like on all of this we're dealing with a fairly new statute and not a whole lot of authority. And so also, too, that Reynolds is the case I know that the Supreme Court has taken. Is that going to help us out here, or should we wait for Reynolds, or what should we do? Well, I believe the best authority is a plain reading of the supervised release statute. So 18 U.S.C. 3583D refers directly to SORNA in indicating to the district court what mandatory and discretionary conditions ought to be applied in supervised release cases. And looking directly at that statute, under the first paragraph dealing with mandatory conditions, there's an express reference to SORNA. The Court shall order as an explicit condition of supervised release for a person required to register under SORNA that the person comply with the requirements of the Act. See, what I get from that is that Congress doesn't want judges fooling around with this from the standpoint to look and say, oh, this really isn't that bad, he shouldn't have a blue dot on his house, and, you know, that they want to make sure if someone comes under SORNA that judges don't have that discretion because they don't like how we use our discretion in that area. So I completely, you know, I think that they're very clear there, but I just have all these other questions since courts have a broad, you know, when you're sentencing someone, you have a broad responsibility both to the person you're sentencing but also to the protection of society. You know, is that something that you can say, well, you know, I'm, you know, take aside not his prior offense that we'll talk about, but just there's other things in this record that would indicate to a court that this is a concerning individual about certain things and that the protection of society, you might want to know where he lives and you might want people to know that. But what's our best authority for that courts don't have under their broad discretion to, you know, to protect society, say I want you to register during your probationary period? I think it's dealt with through SORNA and the supervised release statute because the next paragraph of the supervised release statute deals with discretionary conditions. And there again, Congress has indicated that SORNA triggers other likely or discretionary conditions such as being subject to search, being subject to other restrictions on the person's activities. So this is after subparagraphs D1 through 3. There's another reference to SORNA about if the person is required to register as a sex offender under SORNA, the district court might consider imposing these other restrictions as discretionary conditions. And so a plain reading, I think, putting together SORNA and the supervised release statute indicates to me that only if a person is eligible for SORNA under the express statute that Congress has outlined, should they be required to register and it's not available as a discretionary condition. Congress has really, you know, occupied the field when it comes to sex offender registration through SORNA. So you're making a preemption argument here? Well, I guess what I'm saying is that Congress has authored a more specific statute with specific criteria for eligibility for sex offender registration. And I think we all know and clearly the juvenile mail case, this circuit's decision in juvenile mail, outlines the kind of onerous effects of registration. Of course, the juvenile mail case is to some degree peculiar to that case, given that it's a juvenile and you're looking at a lifetime, you know, of what you normally have with a juvenile record going, you know, out of existence. So I don't know that we could really look to juvenile mail for guidance. And I say that as a member of the panel on juvenile mail. And I appreciate the distinctions between this case with an adult offender and juvenile mail. The requirements of the statute, however, are affirmative with respect to my client, an adult, just as they are with respect to the juvenile in that case. And so there are these onerous requirements of the statute that Congress has imposed through this specific eligibility requirement that we believe is not met here. I guess in response to Your Honor's question about, you know, wouldn't this be a good thing to ensure that someone with a background like this is subject to registration, even if they may not meet the eligibility requirements? Well, here, in this case, we're before the case with a supervised releasee, somebody who's on supervised release already. And so many of the legitimate law enforcement interests in supervising this person and keeping tabs on them are already met by him being on supervised release, him having a probation officer. I just don't know if it's an arrow in the quiver, you know. And I don't think there's any case exactly out there. I think in a few years we'll probably know. But right now, you know, I'm trying to figure out what's the best answer right now. Well, I think that what the parties have presented is an agreement that this defendant is not eligible under SORNA based on an argument that he possessed child pornography. The government has conceded that. And their only argument is that the lewd and lascivious conduct conviction, or lewd and lascivious materials conviction, constitutes a sex offense against a minor. Let me go back then to two points, one to the statute, and then to the point of even if there were discretion, whether this is an appropriate case for exercise of that discretion. So going back to the statute, you point out that we have the mandatory, you must do this in certain instances. And then it later says the court may have further conditions. And it lists those. But as part of the further conditions, there's the inevitable catch-all. And any other condition it considers to be appropriate. So I'm not sure that the fact that you must impose SORNA in some situations somehow X's out the later language, any other conditions. So would you address that? And then also address whether even if you had discretion, could there be an abuse of discretion in this case? With respect to the catch-all within the discretionary conditions, I hate to repeat my argument, but because SORNA is a more specific statute that has eligibility requirement that Congress has mandated in order for a person to have to register, to allow a district court judge then to kind of opt out of that and impose sex offender registration for, you know, based on less evidence. Well, let's say if the court did have discretion, would you assume that the registration would only run the period of time that the court had jurisdiction over the person as opposed to the time period of the statute? Well, I think that that's a good question, Your Honor. I think under SORNA, I mean under the supervised release statute, of course the court's supervised release conditions last only as long as you're under supervised release. So does that obligation then, is it extinguished after that? Our argument, of course, would be that it would. Well, I think there's a pretty good argument for that. If it's a discretionary, if the court, as a part of supervised release, can require someone to register, but they're not required under the statute to register, it would seem that it would coincide with the time of supervised release. But I don't know. I mean, it's not a case, but that sort of makes sense to me. I was hoping to reserve a minute of my time, but I'll take five seconds to try and address Your Honor's question about whether this would have been an abuse of discretion. And we believe it would have been, given the less weighty evidence that was presented in this case that was presented to the district court in the first instance in West Virginia. So I guess I'll reserve 18 seconds. Thank you. We'll give you 30 seconds. Thank you. May it please the Court. My name is Lawrence Lincoln. I'm an assistant U.S. attorney here in this district. As the Court knows, defendant appellant Mr. Kent is challenging his supervised release condition that he register as a sex offender under SORNA. The crux of the government's argument is that Judge Bryan didn't care here because this is a mandatory condition. It's a mandatory condition under 18 U.S.C. Section 3583D. And so the Court need not reach the question here of whether or not the Court, Judge Bryan, abused his discretion in imposing this as a discretionary condition. Well, you're talking the prior conviction. We can't even look at the pictures, right? That's correct, Your Honor. We don't have them in the record. But we do have some descriptions of them. And the Court was able to determine from the pre-sentence report. We have to be able to determine that they're minors, right? You know, as opposed to if we had the pictures, we could look at the pictures and evaluate them. But we have to go with everyone's descriptions along the way. Well, fortunately, we have a record that's replete with the descriptions. The original sentencing pre-sentence report before Judge Kaiser talks about the sexually explicit poses of young children. In provocative clothing. In provocative clothing. You know, I like to think of that little girl, Joan Bonet, you know, in all her little dance clothing. That would seem to qualify, wouldn't it? Well, I'm not sure. My question is, you know, those are the kind of things. You have all kind of kid photos that may be kind of in these provocative clothing. That's correct, Your Honor. But we can't look at anything. No, but here we have something. We have a judgment, a finding, that this constitutes a violation of Title 18, United States Code Section 1462, which talks about lewd and lascivious material. And lascivious is defined as material that's inclined to induce sexual arousal on the part of the abuser. And we cited the Banks case and the Wigan case that talks about that. And so we know that this is something beyond simply dressing a child in a tutu and making her dance. This is something significantly more, if you will, pernicious than that. And while it isn't child pornography, it certainly approaches. I guess that's the, if we have possession of photos that, number one, do not involve identified minors, right? And, number two, do not rise to the level of child pornography sufficient to conduct that, by its nature, was a sex offense against a minor. So what's your best authority for that? Well, Your Honor, we do not concede that this was an offense that, by its nature, was not a sex offense. But what's your best authority that it's not child pornography and there's no identified minors, right? Our best authority is the statutes, the SORNA statute itself, which describes what it means by specified offense against a minor. It specifically talks about a specified offense against a minor being an offense that involves any conduct that, by its nature, is a sex offense and involves minors. And that's exactly what we have here. Do we have any retroactivity problems, if that's your basis for this? I mean, do you have an answer for me on that? Yes. Fortunately, Your Honor, we don't have a retroactivity problem here. Because? Well, we don't have a retroactivity problem because, first of all, SORNA went into effect on July 27, 2006, and Mr. Kent was sentenced and this condition was imposed on July 31, 2006. So SORNA was in effect at the time that he was convicted and this condition was imposed. And this is, I don't think, something that will be addressed by a juvenile male because that, of course, involves a juvenile male. Mr. Kent was 30 years of age at the time of sentencing, I believe, and we would also rely on Smith v. I have to tell you, this case is so much harder for me than it is for either of you. How can I address that, Your Honor? I really want to get to the point. Well, I just don't think it's a no-brainer. And, you know, I mean, there's just a lot that's not answered about this statute. Well, if I can take the court through the analysis that we went through, and I believe the court below went through, we start with the statute itself, SORNA, which talks about it having to be an offense involving conduct, the nature of which is a sex offense against a minor. We know it's a sex offense. We know that because the nature of the offense, 18 U.S.C. section 1462, talks about lewd and lascivious conduct. What does lascivious mean? Well, we just talked about that. Lascivious means that it arouses in the viewer sexual feelings or arousal. So then the only question is whether or not we have minors involved here. And as I said earlier, and as we talked about in our brief, there's significant evidence that there were minors here. We can take a look at the pre-sentence report, which talks about the provocative image of very young girls. We can talk about the motion which was before Judge Bryan below, the upward variance motion from the assistant U.S. attorney at the time of sentencing, which talks about prepubescent girls. So from your perspective, since the lewd and lascivious is otherwise defined, is the most difficult issue for us to determine that they were minors? No, Your Honor. The lewd and lascivious definition goes to the fact that it was a sex offense under the SORNA statute. The issue of whether they were minors, and there was support in the record for whether they were minors, is the issue that I understood at some point the defense was challenging. And I'm prepared to address that as well. Usually we get to look at the pictures. So then we don't have to rely on what other people say. We can just look at the picture and say, that looks like a minor. But we do have a judge below, Judge Bryan, who had an opportunity to review the entire record. But no pictures. No, there were not. As I understand it, somebody saw these, and then they talked to the probation guy, and he doesn't see them. He hears about them, so he writes about them. And then the judge reads what the probation officer wrote about. So correct me if I'm wrong about this sort of sequence. Well, that is essentially correct, that we have reportage from the time of the sentencing below, before the original sentencing, before Judge Kaiser. But I would also point out that we have a lot on the record in the sentencing hearing at that time. We have admissions on the part, if you will, acknowledgments. I won't call them admissions. Acknowledgement on the part of the defense counsel that the provocative images that formed the basis for the lewd and lascivious materials count involved individuals that were under the age of 18. And then if we look at – and there was no objection to that by the court. The court acknowledged that. And then if we look at what the AUSA said at that point, the AUSA said, without objection, these are mostly prepubescent girls who are dressed – Wait, I'm not – can I just stop you for a minute? I'm not – was Judge – what did Judge Bryan have that we don't? Judge Bryan had – actually, you have more than Judge Bryan has. Judge Bryan had the pre-sentence report. He had the upward variance motion that was filed below at the time of sentencing. And we've augmented the – He didn't have the pictures either. So we're reviewing his discretion with things that he didn't have? No. Well, we're – if you will, the court is reviewing his finding that this was a mandatory condition because the offense of possession of lewd and lascivious materials met the statute's definition of a specified offense against a minor. The court also went on to talk about its discretion, saying that even if this was arguable that it was a mandatory condition, I would find, based on my discretion, that this was an appropriate case. What's the basis for his exercising discretion if it's not mandatory? Well, the basis for that is 3583D, which talks about conditions, any condition that can be imposed to the extent it's reasonable. But he had those – there were those other communications that occurred after about talking about the – what – the rape, but, you know, right? Yes. I mean, those were other – they weren't the offense, but they were things that had been – that became a part of the new sentencing, right? That's exactly right. That kind of got people a little bit riled up. It certainly caused concern on the part of the court as – on the part of Judge Bryan, as the court can tell from his statements during the hearing on this matter. The court was very concerned about the intersection between sexual deviancy and violence here, and there were significant – well, disturbing items in the evidence. All right. Since your time's running out, let me ask you this. All right. Under the statute, if the person – if it's mandatory under SORNA to register, then the timeframe of SORNA would control. If we were to find – I'm just hypothetical – that as a matter of discretion, the sentencing judge could order SORNA registration as a part of supervised release, how long would that last? Your Honor, because the authority for the discretionary condition would be 3553D, that is a discretionary condition, it certainly makes sense to me, although I have not read any cases, that it would last up to and until the conclusion of a supervised release condition. As opposed to the time period that's set out in SORNA. SORNA is – yes, SORNA has specific time periods, and since the authority for the discretionary condition would be 3583D, it would seem to me that that would be appropriate. But I would like to – I know you're not conceding your position. Yes, I'm not conceding. I understand that, but I'm just thinking all of this through. I understand. Can I ask another question? Yes, Your Honor. In the transcript from Judge Bryan, he said, we also know that Mr. Kent accepted responsibility for possessing explicit images of young girls. Is he referring back to the Judge Kaiser time? Yes, he is, Your Honor. He's referring back to the pre-sentence reporting, which Mr. Kent specifically indicated or admitted that he had been on websites he shouldn't have, and he had possessed the explicit images of young girls. Okay. Thank you. Thank you. I guess I'm more than prepared to answer any questions the Court may have, but as Your Honor indicated, these were kind of third-hand reports of what the images were. They weren't in front of Judge Bryan, and as Mr. Lincoln indicated, the Court has now more of what – of the record of this case based on the sentencing transcript from West Virginia – or from Western Virginia. That sentencing transcript, I think, that there were provocative pictures, but they weren't naked pictures. There was no discussion of these being naked children or any kind of lascivious display of the genitals. But lewd and lascivious was the charge, right? That's correct. So we don't really go beyond that. I mean, in the sense of we then looked at the statutory definitions of lascivious. Do you disagree with that? I think the Court obviously can look at those definitions and ought to. Lewd and lascivious materials, or obscene or filthy materials, is different than a lewd and lascivious display of the genitals, as would be required by the child pornography statute. My – again, there is insufficient evidence of minors involved here for the Court to exercise, either as a mandatory imposition of sex offence registration or discretionary. So I'd ask the Court to grant our request. Thank you. Thank you. The case just argued is submitted.
judges: Schroeder, McKeown, Callahan